UNITED STATES of America,
Appellee,

v.

John DOE, Edmund J. Devlin, Appellant.

No. 291, Docket 32990.

United States Court of Appeals
Second Circuit.

Argued Dec. 2, 1968.

Decided Dec. 9, 1968.

Ira B. Grudberg, New Haven, Conn., for appellant.

John Cassidento, Asst. U. S. Atty. (Jon O. Newman, U. S. Atty., Hartford, Conn., Daniel Sagrin, Asst. U. S. Atty., New Haven, Conn., on the brief), for appellee.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and RYAN, District Judge.*

FRIENDLY, Circuit Judge:

On November 18, 1968, Edmund J. Devlin appeared pursuant to a subpoena before a grand jury in the District Court for Connecticut which was investigating the stealing of postal money orders, see 18 U.S.C. §§ 500 and 1691. The foreman directed him to furnish exemplars of his handwriting on printed FBI forms. Four of these, designated Exhibits A, C, D and E, called respectively for the months of the year, the alphabet, numbers from zero to eighteen, and signatures. A fifth, designated Exhibit B, required the filling out of a form, which resembled a money order but was labeled "Handwriting sample form—not a negotiable instrument," with the names and, in some instances, an address of ten payees, and also with the signature "George Strouch." Devlin refused to obey the foreman's order.

Three days later Devlin, his counsel and an Assistant United States Attorney appeared before Chief Judge Timbers. Counsel contended that Devlin should be excused from compliance. With respect to Exhibit B it was claimed that the direction violated Devlin's privilege against self-incrimination. With respect

to all the forms, it was claimed that the direction deprived him of the right to counsel guaranteed by the Sixth Amendment and that requiring him to give exemplars without assurance that the writings of other persons would be submitted to the Government's expert would deny him due process of law. When Devlin persisted in his refusal, after proceedings not here challenged as to regularity and with full warning of the consequences, the court adjudged him in civil contempt, and committed him to the custody of the Attorney General "for imprisonment for thirty (30) days, or until such time as he purges himself of this contempt by furnishing the required handwriting exemplars, or until such time as the grand jury before which he appeared is discharged, whichever is earlier." We are advised that the grand jury will be discharged not later than December 22, 1968. The judge stayed execution of the sentence pending this appeal.

■■ The contention as to deprivation of the right to counsel was not seriously pressed before us—wisely so since it is doomed by the explicit ruling in Gilbert v. California, 388 U.S. 263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Moreover Devlin has had all the assistance any counsel could provide. We likewise need not tarry long over the due process argument, which is grounded on the statement in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), "that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See also Stovall v. Denno, 388 U.S. 293, 302–303, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Palmer v. Peyton, 359 F.2d 199 (4 Cir. 1966). Expert comparison of handwriting exemplars bears scant resemblance to eye-

* Of the Southern District of New York, sitting by designation.

witness identification. See Osborn, Questioned Documents, and particularly Ch. XV. Moreover, the principle enunciated in *Simmons* is a rule of exclusion, not a testimonial privilege; nothing in the *Simmons* opinion or any other ruling of the Supreme Court suggests that a suspect can refuse to allow the taking of photographs merely because of a fear that the police might put them to an impermissible use.

■ Devlin's claim that execution of the form designated as Exhibit B would violate his privilege against self-incrimination is also unfounded. His argument is that although Gilbert v. California, supra, 388 U.S. at 265–267, 87 S.Ct. 1951, held generally that compulsion of handwriting exemplars was not within the privilege, reproduction of the very instruments used in the commission of the crime stands differently.[1] But that contention was answered in United States v. Wade, 388 U.S. 218, 222–223, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967), where the Court said, in language equally applicable to handwriting:

> "Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt".

Contrast United States ex rel. Hughes v. McMann, 405 F.2d 773, 777 (2 Cir. 1968).

■ The remaining point is that although in Wade and Gilbert the Court spoke of compulsion, see 388 U.S. at

221–223, 266–267, 87 S.Ct. at 1929–1930, 1953, the orders there were by the police and carried no legal consequences for disobedience, whereas here a court has entered an order of imprisonment for civil contempt. Since the refusal to furnish the exemplars was not privileged, there would seem to be no basis for denying the remedy long imposed when the duty to furnish evidence has been breached. See United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950), and 8 Wigmore, Evidence §§ 2192, 2194 (McNaughton rev. 1961). Mr. Justice Fortas' dissents in the cited cases assumed that the majority's holdings that the utterance in *Wade* and the exemplars in *Gilbert* were outside the privilege meant that a judgment for contempt could be rendered if an accused, after proper process, refused to comply with directions to speak or to write, 388 U.S. at 260, 291, 87 S.Ct. at 1949, 1965,[2] indeed he suggested, in somewhat of a hyperbole, that the majority meant that a non-complying accused could be so held "indefinitely." We are confident that the majority did not intend to go that far. Even though evidence is not within a testimonial privilege, the due process clause protects against the use of excessive means to obtain it. See Holt v. United States, 218 U.S. 245, 253, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Schmerber v. California, 384 U.S. 757, 758, 759–760, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). While exemplars of Devlin's handwriting may be important to the Government, they can hardly be essential; apart from the probability of its being able to find other samples, it can rely before the grand jury and, if an indictment is returned, at trial, on the strong inference to be drawn from continued refusal by Devlin to furnish ex-

---

1. The opinions of the Supreme Court and of the Supreme Court of California, 63 Cal.2d 690, 47 Cal.Rptr. 909, 408 P.2d 365 (1966), in *Gilbert* do not make clear just what the exemplars were. Neither

does examination of the briefs in the Supreme Court.

2. See to the same effect Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817, 819 (1967).

emplars after judicial determination that he is bound to do so. But the sentence imposed by Judge Timbers was relatively mild, and the stay granted during this appeal has made it milder still.

The judgment is affirmed. The stay of execution of the sentence will terminate at 3 P.M. on the day following the filing of this opinion.