UNITED STATES of America, Plaintiff,

v.

Wesley L. SUMPTER, Defendant.

No. CR90–0–20.

United States District Court,
D. Nebraska.

June 5, 1990.

---

Jerry Soucie, West Chester, Pa., for plaintiff.

David Downing, Superior, Neb., for defendant.

## MEMORANDUM AND ORDER ON OBJECTION AND APPEAL OF MAGISTRATE'S REPORT AND RECOMMENDATION

URBOM, District Judge.

On May 1, 1990, the magistrate recommended that the defendant's motions to suppress, filings 21 and 22, be denied. The defendant has objected as to filing 22.

The defendant argues that the cases cited by the magistrate are distinguishable, but I do not find the distinctions meaningful. All the cases cited by either party, except *United States v. Lavin,* 604 F.Supp. 350 (E.D.Pa.1985) and dictum in *United States v. Chemical Bank,* 593 F.2d 451 (2nd Cir.1979) affirm that generally a suppression of a defendant's tax returns or return information is not appropriate where such information was obtained in violation of 26 U.S.C. § 6103. Criminal and civil penalties are provided and courts have by and large considered those remedies adequate.

The defendant suggests that an evidentiary hearing nonetheless should be held to determine whether the government can establish the necessary foundation for admission of the documents through the testimony of the officials who made the disclosure in violation of 26 U.S.C. § 6103. That is an appropriate suggestion, because, if a witness is under the prospect of a criminal prosecution for wrongful disclosure of tax records or tax information, that person might choose to decline to testify and thereby cause a failure of adequate foundation. Whether the government chooses to put on any evidence for which foundation would be required is not known. Nonetheless, it seems to me that it is a matter about which resolution should be reached before commencement of the trial.

IT THEREFORE IS ORDERED that:

1. the motion to suppress opinion evidence based on handwriting exemplar, filing 21, is denied; and

2. a hearing shall be had on the motion to suppress evidence disclosed in violation of 26 U.S.C. § 6103, filing 22 on a date to be developed by counsel with the court.

## REPORT AND RECOMMENDATION

Filed May 4, 1990.

DAVID L. PIESTER, United States Magistrate.

Defendant Wesley Sumpter has been charged with mailing a threatening communication to an agent of the Internal Revenue Service in violation of 18 U.S.C. § 876. The defendant has filed a Motion to Suppress Opinion Evidence Based on Handwriting Exemplars, filing # 21, such exemplars having been provided by the defendant on January 11, 1990, and a Motion to Suppress Evidence Disclosed in Violation of 26 U.S.C. § 6103, filing # 22. The government has submitted no response to the defendant's motion.

In his motion to suppress the handwriting exemplars and brief in support the defendant argues that the government will, at trial, attempt to link Sumpter with the "threatening" letter via an expert opinion

from a forensic document examiner who has compared the original letter with the defendant's handwriting exemplars. The defendant asserts that the handwriting exemplars in this case are tainted and highly prejudicial for two reasons, (1) Sumpter was the only taxpayer being handled by the I.R.S. agent to whom the anonymous letter was sent that was required to provide handwriting exemplars; and (2) the exemplars were not in the defendant's normal handwriting but rather were contrived, and thus prejudicial, because law enforcement officials required Sumpter to "mimic the original [letter] that may have been deliberately disguised." (Defendant's Brief at p. 4–5).[1]

■ The defendant's objection to any expert testimony based on the handwriting exemplars is premised not upon a Fifth Amendment self-incrimination argument nor upon a Fourth Amendment "seizure" argument. Rather the objection is based on a rather novel argument that such a "tainted and unreliable" handwriting exemplar offends due process in the same way as a "tainted and unreliable eyewitness identification," and should be suppressed for the same reasons. In essence the defendant invites the court to apply the suggestive line-up analysis of *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) to cases involving contrived handwriting exemplars despite the fact that, as the defendant admits, no court has adopted that theory. For the reasons set forth below I shall decline the defendant's invitation.

In *United States v. Doe*, 405 F.2d 436 (1968), the Second Circuit explicitly rejected a similar due process argument in a case wherein the defendant was refusing to submit to handwriting exemplars ordered by a grand jury. The defendant argued that to require him to give exemplars "without assurance that the writings of other persons would be submitted to the Government's expert. . . ." created a situation that was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and thus offended due process. *Doe*, 405 F.2d at 437. The court rejected the defendant's argument and stated:

> Expert comparison of handwriting exemplars bears scant resemblance to eyewitness identification. (Citation omitted). Moreover, the principle enunciated in *Simmons* is a rule of exclusion, not a testimonial privilege. . . .

*Id.* at 438. Despite the fact that *Braithwaite* and *Biggers* have changed the analysis and factors to be considered in suggestive eye-witness identification cases, those changes in no way warrant a conclusion different from that reached by the Second Circuit in *Doe*.

In addition to the due process argument the court in *Doe* was faced with the question of whether the privilege against self-incrimination was violated by requiring the defendant to give a handwriting exemplar by executing a sample money order resembling those upon which the prosecution was based. The defendant argued that although *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), held that compelling handwriting exemplars was not protected by the privilege against self-incrimination, it did not dictate that "reproduction of the very instruments used in the commission of the crime" was outside the privilege. Again the court rejected the defendant's argument and held that the Supreme Court had answered that contention in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) when it concluded that compelling a defendant to give a voice exemplar in the presence of witnesses, and even compelling him to "utter words purportedly uttered by the rob-

---

1. Defendant's motion states that Sumpter was "instructed to print, rather than write in his normal cursive script," was "instructed to write several notes and envelopes duplicating the contents of the letter sent to" the I.R.S. agent, and that those instructions included "precise and specific instruction as to what words and letters to use, including misspellings, and when to reverse letters and when to place a line through the letter 'O'."

ber," *Wade*, 388 U.S. at 222–23, 87 S.Ct. at 1930, was not a compulsion to utter any words that were testimonial in nature.

The Supreme Court has never directly addressed the issue of requiring a defendant to "utter the words of the robber" in the context of handwriting exemplars as the Second Circuit did in *Doe*. However, subsequent to the *Gilbert/Wade* pronouncements the Court again addressed the voice and handwriting exemplar issues in the companion cases *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) and *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). Addressing Fourth and Fifth Amendment challenges to voice exemplars (*Dionisio* ) and a Fourth Amendment challenge to handwriting exemplars (*Mara* ), the Court reaffirmed its holdings in *Gilbert* and *Wade*, and, more importantly for purposes of the question addressed in *Doe*, spoke of voice and handwriting exemplars with no distinctions between the two. Indeed the Court in *Mara* stated in relation to the Fourth Amendment "seizure" issue:

> Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in physical characteristics of a person's script than is in the tone of his voice. (Citations omitted).

410 U.S. at 21, 93 S.Ct. at 776.

Although authority is sparse on the issue, a handful of courts have addressed the issue of "contrived" handwriting exemplars where the defendant is required to write in a manner different from their normal script. The Eighth Circuit addressed the issue in a *per curiam* opinion in *United States v. Richardson*, 755 F.2d 685 (8th Cir.1987). Relying on the unpublished opinion of the district court, the Court of Appeals rejected the defendant's argument that *Mara, Dionisio*, and *Gilbert* were inapplicable to her case because she had been required to give a handwriting exemplar "in a backward slant, unlike her natural handwriting." *Richardson*, 755 F.2d at 685. *Richardson* was cited by the Third Circuit in *Matter of Special Federal Grand Jury*, 809 F.2d 1023 (3rd Cir.1987), wherein the court held that compelling a defendant to produce a writing sample with a "backward slant," not his normal writing style, did not violate the privilege against self-incrimination. The Third Circuit concluded, for purposes of a Fifth Amendment challenge:

> The mere fact that a style of writing is one which a witness would not normally display does not transform the sample from physical to testimonial evidence.

*Id.* at 1027.

Based on the authority cited above, I conclude that defendant Sumpter has failed to raise any persuasive argument which would warrant the suppression of expert testimony based on the "contrived" handwriting exemplars. Any argument that the handwriting sample is so contrived and abnormal as to make identification speculative, inconclusive, or untrustworthy should be made to the jury and would go to the weight and credibility of the expert's testimony, not to its admissibility.

The defendant has also filed a Motion to Suppress Evidence Disclosed in Violation of 26 U.S.C. § 6103, filing # 22, wherein the defendant seeks an order of the court suppressing any evidence directly from or derived from any I.R.S. records contained in the defendant's I.R.S. file. The defendant contends that the government's expert forensic document examiner used the illegally obtained file in forming his opinion as to the authorship of the threatening letter and accompanying envelope.

The federal statute relied upon by the defendant, 26 U.S.C. § 6103, is extensive legislation which is intended to guarantee the confidentiality of taxpayer's "returns and return information" and to strictly limit the disclosure of such information.[2] As

---

2. 26 U.S.C. § 6103(a) states:
   General Rule.—Returns and return information shall be confidential, and except as authorized by this title—
   (1) no officer or employee of the United States,

   (2) no officer or employee of any State, any local child enforcement agency, or any local agency administering a program listed in subsection (1)(7)(D) who has or had access to returns or return information under this section, and

584

relevant to this discussion, subsections (h) and (i) of § 6103 permit disclosure of returns and return information to federal officers and employees; subsection (h) specifically relates to disclosure for purposes of "tax administration" and subsection (i) governs disclosure for "administration of Federal laws not relating to tax administration", i.e., non-tax criminal and civil actions under federal law. The defendant asserts disclosure of his tax returns or return information would be governed by subsection (i), since he is being prosecuted for a non-tax violation.[3]

The defendant asserts that between January 9th and 11th, 1990, following receipt of the threatening letter, I.R.S. officers and inspectors obtained the defendant's "closed IRS collection file from the IRS office in Omaha, Nebraska," and revealed the contents of that file to an Assistant United States Attorney as well as the forensic document examiner in Washington, D.C. The defendant further contends that these actions were in violation of § 6103(i) which requires the "grant of an ex parte order by a Federal district court or magistrate" upon an application by the appropriate official as set forth in § 6103(i)(B). Defendant's motion to suppress is based on his allegation that no order was either applied for nor issued by any court, and, therefore, any evidence from the file or based on records in the file should be suppressed.

As I noted above, the government has offered no response to the allegations set forth in the defendant's motion. Given that violations of § 6103 can carry severe criminal and civil penalties for persons responsible for such disclosure, I am hesitant to make any findings of fact based on the limited record before me on this motion.

For that reason alone I would be inclined to grant an evidentiary hearing, as requested by the defendant, to fully develop the facts surrounding these allegations. However, in this case I conclude that such a hearing is unnecessary, in that the remedy sought by the defendant is unavailable for the violation which he has alleged.

█ A review of court opinions which have addressed this issue indicates that as a general rule suppression of a defendant's tax returns or return information is not an appropriate remedy in cases where such information was obtained in violation of § 6103. *See, United States v. Michaelian*, 803 F.2d 1042, 1049–50 (9th Cir.1986); *United States v. Claiborne*, 765 F.2d 784, 793 (9th Cir.1985); *Marvin v. United States*, 732 F.2d 669, 672–73 (8th Cir.1984); *United States v. Barnes*, 604 F.2d 121, 146 (2nd Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Mangan*, 575 F.2d 32, 41 (2nd Cir.1978), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978). As those cases indicate, Congress has provided criminal and civil penalties for unauthorized disclosure of tax return information pursuant to 26 U.S.C. § 7213 (making such disclosure a felony) and 26 U.S.C. § 7431 (civil damages), therefore, courts are "reluctan[t] to imply a judicial remedy for violations of § 6103 given Congress' explicit provision for a remedy." *Michaelian*, 803 F.2d at 1049.

Only one U.S. District Court has ever ordered a remedy which might be considered comparable to that sought by the defendant herein. In *United States v. Lavin*, 604 F.Supp. 350 (E.D.Pa.1985), the court set aside certain portions of an affidavit in support of a wiretap application

(3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), paragraph (2) or (4)(B) of subsection (m), or subsection (n), shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

3. There is no indication that defendant's prosecution pursuant to 18 U.S.C. § 876 for mailing a threatening letter to an agent of the Internal Revenue Service would cause this case to be characterized as a "tax administration" case for purposes of 26 U.S.C. § 6103(h). 18 U.S.C. § 876 makes criminal the mailing of a threatening communication to "any person;" it is not limited to threats against an agent of the Internal Revenue Service.

which relied upon information obtained from an unauthorized disclosure of return information in violation of § 6103(i).[4] *Lavin* relied solely upon dictum from a Second Circuit case, *United States v. Chemical Bank,* 593 F.2d 451 (2nd Cir.1979), which suggested that suppression of such illegally disclosed evidence might be an appropriate remedy for a § 6103 violation. Besides the fact that *Chemical Bank*'s dicta is at odds with two other panel opinions from that circuit, *see supra, Barnes* and *Mangan,* the court's suggestion is based entirely on a Fifth Circuit case, *United States v. Tweel,* 550 F.2d 297 (5th Cir.1977), which had nothing to do with § 6103 or tax return information disclosure, but rather involved an I.R.S. agent's deceitful actions in obtaining a defendant's consent to photocopy the defendant's own financial records which were in the possession of his accountant. In short, *Tweel* did not involve a § 6103 disclosure case, and indeed was not a disclosure case at all. I, therefore, am not persuaded by that the *Lavin* court's opinion is an accurate reflection of the law on this question. In light of the Eighth Circuit's holding to the contrary, *Marvin v. United States, supra,* I must recommend that the defendant's motion to suppress based on an alleged violation of § 6103 be denied.

IT THEREFORE HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's motions to suppress, filings # 21 and 22, be denied.

The defendant is hereby notified that unless objection is made within ten days after being served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.

Dated May 1, 1990.

---

**4.** The *Lavin* court found that even without the improperly disclosed information there was still sufficient probable cause to support the order allowing interception. 604 F.Supp. at 356.